Recco A. BOUKNIGHT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 03–CO–105, 03–CO–467.

District of Columbia Court of Appeals.

Argued Sept. 14, 2004.

Decided Feb. 3, 2005.

Ian A. Williams, Washington, DC, appointed by the court, for appellant.

John R. Fisher, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and Daniel M. Cisin and Michelle A. Zamarin, Assistant United States Attorneys, were on the brief, for appellee.

Richard K. Gilbert, Blair G. Brown, Eleanor H. Smith, and David Reiser, Washington, DC, were on the brief, for amicus curiae The Innocence Project of the National Capital Region.

Before TERRY and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

1. *Bouknight v. United States*, 641 A.2d 857 (D.C.1994).

2. The other convictions affirmed were for two counts of first-degree burglary while armed, D.C.Code §§ 22–801(a), –3202 (2001) (formerly §§ 22–1801(a), –3102 (1981 ed.)), attempted robbery, D.C.Code § 22–2802 (2001)

BELSON, Senior Judge:

This case requires us to rule for the first time on an appeal from the trial court's application of the Innocence Protection Act (IPA). D.C.Code § 22–4131 (2004 Supp.). In 1994, this court affirmed on direct appeal Recco Bouknight's conviction of three counts of first-degree (felony) murder while armed,[1] and five other related offenses.[2] Bouknight now appeals the trial court's orders rejecting two collateral attacks upon those convictions. Bouknight claimed, under D.C.Code § 23–110 (2001), that his trial counsel had been ineffective, particularly in that he had prevented him from participating in his own defense. Bouknight also requested relief under the IPA. The trial court denied appellant's § 23–110 claim, and ruled that Bouknight had not made a sufficient showing to warrant relief under the IPA. We affirm.

## I.

Recco Bouknight was acquainted with the murder victim, Lloyd Thomas, and Thomas's friend, Angela Mercer, from having sold them drugs in return for money and sexual acts. Mercer testified that a short while after she and Thomas had conversed with Bouknight and others on the street, Bouknight came to Mercer's door and asked who was with her in her apartment and whether the guest had any money. Mercer let Bouknight into her apartment, but asked that he not do anything to her guest, Thomas. While she and Bouknight talked in the kitchen, Thomas went into the bedroom. Bouknight then walked to the apartment door

(formerly § 22–2902 (1981 ed.)), carrying a pistol without a license, D.C.Code § 22–4503(a) (2001) (formerly § 22–3204(a) (1981 ed.)), and possession of a firearm during a crime of violence, D.C.Code § 22–4503(b) (2001) (formerly § 22–3204(b) (1981 ed.)).

and admitted three friends who had also been conversing with Mercer and Thomas on the street. Mercer thought she saw one of the friends hand a gun to Bouknight and shouted a warning to Thomas. Bouknight entered the bedroom and was pointing a gun at Thomas by the time Mercer got there. Thomas said "what's up" and reached into his coat pocket, whereupon Bouknight shot Thomas through the jaw and neck, fatally striking his carotid artery. According to other witnesses, someone later threw Thomas' body out the window.

Several months later, the police arrested Bouknight. He waived his *Miranda* rights and gave a written confession, which essentially paralleled Mercer's account of the killings. He added that Thomas had tried to buy drugs from him and his friends when they conversed on the street shortly before the shooting, and that when Bouknight's aunt then told him that Thomas had a lot of money, he got a gun from one of his friends, Steven Davis, went to Mercer's apartment with Jamal Jones, and Irving (Tom) Bolden, asked Thomas where the money was, and shot him when Thomas reached for his pocket.

At trial, Bouknight took the stand, testified that he was not present at Mercer's apartment at the time of the shooting, and explained that instead he was visiting a girl, Lee Lee, who lived in a different part of the same building. He denied that he had confessed, and stated that a detective had handed him a typed statement and told him he could leave if he signed it, and so he signed it without even reading it. The jury disbelieved Bouknight's testimony and convicted him on all counts. We affirmed on direct appeal. *Bouknight, supra.*

## II.

Five years later, in 1999, Bouknight filed a motion pursuant to D.C.Code § 23–110

(2001) seeking to have his conviction set aside, primarily on the basis that his trial counsel had been ineffective. The judge who had tried the case held a hearing on the motion. In support of the motion Bouknight testified to a third account of the killing which contrasted sharply with his confession (that he shot Thomas) and his trial testimony (that he was not present at the shooting). Bouknight stated for the first time that he was present at the shooting, that he had just had sexual relations with Thomas, and that it was Steven Davis who had entered the apartment and shot Thomas despite Bouknight's efforts to stop him. Bouknight also testified that his trial attorney, Mark Rochon, repeatedly failed to allow Bouknight to tell him what really happened and continued to advise him to use the alibi defense to which he then testified at trial. At the hearing, Bouknight acknowledged that, before he had retained Rochon, he had told his court-appointed trial counsel that he had killed Thomas, but he testified that he was not satisfied with her efforts to secure a good plea bargain. He also testified that, initially, he had been so afraid of Steven Davis that he did not tell Rochon, who had replaced his court-appointed counsel, that Davis had killed Thomas. However, Bouknight asserted, when he heard a month or two before trial that Steven Davis had died, he overcame his fear, and told Rochon a week or so before the trial that the deceased Davis was the killer.

Bouknight claimed that he testified at trial to a false alibi account because his counsel advised him to stay with his alibi defense on the theory that, if he testified to his new account, the jury would think that he was "trying to put the weight on Steve" since Steven Davis was dead. In addition, Bouknight cited his initial fear of Davis and his "youthful personal shame

and embarrassment for his homosexual tendencies and acts" as explanations for his inconsistent defense theories.

Rochon testified at the § 23–110 hearing that he had been engaged in criminal defense work commencing in 1983, serving first for seven years with the Public Defender Service and thereafter with a private firm. He could recall some matters concerning the trial held eleven years before the hearing, but not certain specifics. He recalled that he had spoken often with Bouknight, and, although he may have cut Bouknight off at times, he "felt quite comfortable that [he] knew everything that he was either able to or willing to tell me about." [3] Rochon was unable to recall specifically if Bouknight's version of the events in question had shifted over time, nor was he able to recall whether Bouknight had ever told him that he was present at the scene of the murder, or claimed that someone else had committed the murder. Rochon was not specifically asked whether he advised Bouknight to stay with his fake alibi story—probably because of the testimony just summarized.

Bouknight accompanied his § 23–110 motion with the statements of Jamal Jones and Eric Boyce. Jones stated that he had been present at the scene, and corroborated Bouknight's new version of the killing. Boyce stated only that Davis, whom he had feared, had told him to say Bouknight had committed the crime, and that Thomas had owed Davis some money.

The trial judge denied the § 23–110 motion for several stated reasons, the most important of which was that Bouknight had shown himself to be a liar, by his own account lying to the police and to the jury at trial. The judge also noted the implausibility of Bouknight's claim that his counsel repeatedly cut off his efforts to tell him that Davis had shot Thomas. In particular, the judge noted that Bouknight's further assertion that counsel told him that it would look like he was trying to "put the weight" on the deceased Davis if he testified at trial that Davis was the killer contradicted his present claim that counsel never let him tell him about that account. In deciding not to credit Bouknight's § 23–110 testimony, the judge also noted Bouknight's obvious self-interest in the outcome. In light of his ruling that Bouknight had failed to establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the judge did not consider the issue of prejudice.

During the § 23–110 proceeding, Bouknight's 23–110 counsel, who is also his counsel on this appeal, filed a motion seeking a new trial under the Innocence Protection Act. In the motion, Bouknight incorporated the allegations he had made in his § 23–110 motion, as well as the accompanying affidavits.

The judge denied the government's oral motion to dismiss the IPA motion, and appointed Bouknight's § 23–110 counsel to represent him for the purpose of replying to the government's anticipated response to the IPA motion. After reviewing the parties' written submissions, the judge denied the IPA motion without holding another hearing, ruling that Bouknight had not met the "new evidence" requirement and other requirements of the IPA and, alternatively, that Bouknight's testimony and affidavit were not credible given the number of times he had contradicted himself about the facts.

---

**3.** In his affidavit, Mr. Bouknight also asserted that his counsel had failed to contact witnesses Bouknight suggested, and failed to follow up on Bouknight's complaints about how his confession was obtained. These complaints were not argued in appellant's brief.

## III.

■ Bouknight's challenge to the trial court's denial of his § 23–110 motion does not require extended discussion. We review with deference the trial court's rulings regarding claims of ineffective assistance of counsel. *Bowman v. United States,* 652 A.2d 64, 73 (D.C.1994); *Curry v. United States,* 498 A.2d 534, 540 (D.C. 1985); *Alston v. United States,* 838 A.2d 320, 324 (D.C.2003). Insofar as such rulings rest upon findings of fact, we will not reverse the trial court's determinations if they are supported by evidence in the record. *Id. See* D.C.Code § 17–305(a) (2001). The determination of credibility is for the finder of fact, and is entitled to substantial deference. *Byrd v. United States,* 614 A.2d 25, 30 (D.C.1992).

■ The trial court's determination that appellant's testimony is unworthy of belief is amply supported by the record. Not only did the trial judge review a record that set forth Bouknight's three conflicting versions of Thomas's murder, he also observed Bouknight's testimony at both the trial and the § 23–110 hearing, and carefully considered Bouknight's self contradictions, the implausibility of his account of discussions with counsel, and his interest in the outcome of the case. The judge then concluded that Bouknight had not established ineffectiveness of counsel. We affirm that ruling.

## IV.

Bouknight's appeal of the trial court's denial of the IPA motion merits more discussion, as this is the first appeal that requires us to consider that legislation.

### A.

The relatively recent availability of DNA evidence, *United States v. Porter,* 618 A.2d 629 (D.C.1992), focused attention on the gap in judicial remedies available to convicted persons who secure evidence of actual innocence more than three years after their convictions or, in some cases, their plea of guilty.

Superior Court Criminal Rule 33 provides for motions for new trial based upon newly discovered evidence brought within three years after the verdict or finding of guilt. However, DNA results may become available more than three years after conviction. Moreover, as the legislative history of the IPA reflects, evidence other than DNA results may become actually available to a person under judgment of conviction after the three-year limit of Rule 33 has expired.

■ D.C.Code § 23–110 (2001) provides an additional remedy to convicted persons who seek to make a collateral attack on their conviction, but that avenue too is limited in significant ways. It is designed to remedy convictions obtained in violation of statutory or constitutional provisions which resulted in a fundamental miscarriage of justice. D.C.Code § 23–110 (2001); *Southall v. United States,* 716 A.2d 183, 188 (D.C.1998).

The District of Columbia Council began to consider legislation to eliminate the absence of a judicial remedy for persons who obtain new evidence that affirmatively shows their innocence more than three years after conviction or plea of guilty. Initially, the Council considered adopting an Innocence Protection Act that dealt only with biological evidence such as DNA, and expanding § 23–110, which has no time limit, to cover non-biological evidence of innocence. Eventually the Council enacted D.C. Law 14–134, effective May 17, 2002, (49 D.C. Reg. 408 (2001)), codified at D.C.Code §§ 22–4131, –4132, –4133, –4134. It enables a convicted person to seek relief on the basis of "new evidence," whether

biological or not, of "actual innocence," which it defines as meaning "that the person did not commit the crime of which he or she was convicted." D.C.Code § 22–4131(1).[4]

In its definition section, the Act provides:

(7) "New evidence" means evidence that:

(A) Was not personally known and could not, in the exercise of reasonable diligence, have been personally known to the movant at the time of the trial or the plea proceeding;

(B) Was personally known to the movant at the time of the trial or the plea proceeding, but could not be produced at that time because:

(I) The presence or the testimony of a witness could not be compelled or, in the exercise of reasonable diligence by the movant, otherwise obtained; or

(ii) Physical evidence, in the exercise of the movant's reasonable diligence, could not be obtained; or

(C) Was obtained as a result of post-conviction DNA testing.

D.C.Code § 22–4131(7).

The IPA sets forth requirements that a motion for relief on the basis of actual innocence must meet in order to succeed:

(c) The motion shall set forth specific, non-conclusory facts:

(1) Identifying the specific new evidence;

(2) Establishing how that evidence demonstrates that the movant is actually innocent despite having been convicted at trial or having pled guilty; and

(3) Establishing why the new evidence is not cumulative or impeaching.

(d)(1) The motion shall include an affidavit by the movant, under penalty of perjury, stating that movant is actually innocent of the crime that is the subject of the motion, and that the new evidence was not deliberately withheld by the movant for purposes of strategic advantage.

D.C.Code § 22–4135(c)–(d).

In the brief IPA motion to vacate convictions or for new trial filed by Bouknight's counsel during the § 23–110 hearing, Bouknight stated that the allegations set forth in his § 23–110 motion "also set forth a claim of actual innocence and have been recounted at length therein and thus do not need to be restated herein." Bouknight sought a separate hearing on the IPA motion. After denying the § 23–110 motion in open court, the judge denied what amounted to an oral motion by the government for summary dismissal of the IPA motion, and directed the government to respond. The court broadened the appointment of Bouknight's § 23–110 counsel to include a reply to the government's response to the IPA motion.

The trial court thereafter denied Bouknight's IPA motion essentially on two alternative bases: first, that the evidence that Bouknight proffered in support of his motion, in particular the statement of murder witness Jamal Jones, which supports Bouknight's claim that Davis was the kill-

4. At the suggestion of the Committee on the Judiciary of the District of Columbia Council, the United States Attorney's Office and the Public Defender Service collaborated to draft an amendment to pending Bill 14–153 (the "Innocence Protection Act of 2001") to include claims of innocence not based on DNA evidence and arising outside the three-year limit of Rule 33. This amendment was incorporated into the final version of the statute. *D.C. Council Committee on the Judiciary, Report on Addendum to Bill 14–153*, at 5–6 (January 29, 2002); *D.C. Council Committee on the Judiciary, Report on Bill 14–153*, at 4 (October 11, 2001).

er, was not "new evidence" under the IPA; and, second, that Bouknight's testimony at the § 23–110 hearing, repeated in his IPA affidavit, cannot be credited. He held that a hearing was not required because "the motion and files and records of the case conclusively [show] that the movant is entitled to no relief" (quoting the IPA language set forth at D.C.Code § 22–4135(e)(1)).

On appeal, Bouknight challenges first the trial court's conclusion that the statement of Jamal Jones was not "new evidence," under the IPA. He argues that Jones, who had not been indicted, had "palpable Fifth Amendment concerns that would have made it foolhardy for him to testify at that time." He adds that Jones actually asserted his Fifth Amendment privilege, not at trial, but when called to testify during a preliminary stage of the case, some five months before trial, by Bouknight's co-defendant, Marquette Witherspoon. The record of a hearing held on December 12, 1990, reflects that counsel for Jamal Jones represented that he had advised Jones of his Fifth Amendment rights and that Jones indicated unequivocally that he did not wish to testify. Jamal Jones himself stated to the hearing judge, who was not the judge who presided over the trial five months later, that he would choose not to testify "for either side" if called as a witness.[5] Bouknight, of course, knew at the time of trial that Jones was a witness to the murder of Thomas, as both Jones and, now, Bouknight say that the two of them were present when Davis—not Bouknight—killed Thomas.

Bouknight argues that, under these circumstances, the proffered testimony of Jones constitutes "new evidence" under § 22–4131(7)(B)(I), which includes evidence that "was personally known to the movant at the time of the trial ... but could not be produced at that time because: (I) the presence or the testimony of a witness could not be compelled or, in the exercise of reasonable diligence by the movant, otherwise obtained...." We will deal below with the question whether the Jones statement constitutes "new evidence," but will deal first with a related provision of the IPA that stands in the way of its admission, even if it is assumed to be new evidence.

## B.

When the trial took place—several months after Jones invoked the Fifth Amendment—Bouknight did not subpoena Jones as a witness or raise the matter of whether the government would extend him immunity. At the time of trial, Bouknight was aware that Jones had been present, witnessed the circumstances of the murder, and knew who else was present. Bouknight took the stand in his own defense and raised the defense of alibi, that is, that he was not present at the scene at the time of the murder, but was elsewhere in the same building visiting a young woman.

As set forth above, § 22–4135 requires in part that IPA motions include an affidavit by movant stating, *inter alia*, "that the new evidence was not deliberately withheld by the movant for purposes of strategic advantage." The IPA also provides

---

5. The pretrial hearing dealt primarily with whether co-defendant Witherspoon's counsel, Charles Daum, Esq., should be permitted to withdraw, as he had heard Jones make a statement, arguably admissible on the basis that it was against Jones' penal interest, concerning which Bouknight might call Daum to testify. Presumably that testimony, if consistent with Jones' present statement, would incriminate Jones in that it placed him in the group of those who entered the apartment, and would incriminate Bouknight in the same fashion, and not as the one who fired the shot.

that, where the movant asserted a theory of defense at trial that is "inconsistent with the current claim of innocence, the court should consider" the specific reason the movant asserted an inconsistent theory at trial. D.C.Code § 22–4135(g)(1)(D).

In the affidavit accompanying his IPA motion, Bouknight stated:

I did not withhold the version of events that I am now asserting at the time of my trial in the hope of deliberately trying to gain a strategic advantage or to deliberately cause harm to the government's ability to prosecute me or anyone else. I was not aware that there was any possibility that the law would be changed in such a manner as to allow an opportunity for those serving sentences to challenge their convictions on the basis of actual innocence at time of either 1) Mr. Thomas' murder; 2) my trial; or 3) my filing of the 23–110 motion.

■ While this statement appears to claim that Bouknight could not have withheld at trial evidence supporting his current version of events in order to reveal it later in an IPA motion because he did not know there would be an IPA, it falls well short of affording a satisfactory specific reason for his decision to place a false version of the occurrence before the jury. From his § 23–110 testimony, it appears that at the time of trial he concluded, allegedly influenced by advice of counsel, that the alibi account had a better chance of success than the account he now advances—that Steven Davis actually shot Thomas. In aid of the alibi strategy he actually used, he would have had no interest in calling Jones, who would have dramatically contradicted his testimony by placing him at the scene of the murder.

Thus, it was obviously to Bouknight's strategic advantage that Jones not testify at trial, and Bouknight made no effort reflected in the record to get Jones to testify. That Bouknight was presumably aware that Jones might plead the Fifth Amendment again does not justify his decision to place before the jury, deliberately, a fabricated account of the killing while at the same time deliberately making no effort to put Jones' testimony before the jury. As we discuss below, reasonable diligence required Bouknight at least to make the effort to obtain Jones' testimony. His decision to make no effort to call Jones as a witness was part and parcel of his deliberate strategy of withholding from the jury a truthful account of how the killing took place. We conclude that Bouknight's strategy regarding Jones amounts to deliberate withholding under § 22–4135(d) of the IPA, and that he therefore cannot satisfy an express prerequisite for relief under that statute.

### C.

Even though we conclude that Bouknight deliberately withheld any effort to get Jones' testimony before the jury, the related issue of whether Jones' statement constitutes "new evidence" under the IPA merits discussion. It raises the question whether the presence or testimony of Jones could not have been "compelled or, in the exercise of reasonable diligence by [Bouknight], otherwise obtained." D.C.Code § 22–4131(7)(B)(I).[6]

The trial court ruled that Bouknight had not acted with reasonable diligence. It did not agree with the movant's argument that he could satisfy the statutory requirements for "new evidence" merely by stating that Jones had obvious Fifth Amendment concerns. The court did not, however, refer

**6.** We cannot agree with appellant that the language of § 22-4131(7)(B)(i) dispenses with

any diligence requirement regarding a witness whose testimony cannot be compelled.

to Jones' assertion of his Fifth Amendment rights some five months earlier before another judge assigned to this case.

In ruling that Bouknight had not exercised reasonable diligence, the trial judge noted that Bouknight had made no effort to subpoena Jones. In support of that ruling, the government argues before us that reasonable diligence required not only that Bouknight subpoena Jones, but that he make some effort to secure immunity from prosecution for Jones.

■ We agree with the trial judge that Rule 33 principles regarding diligence apply to motions brought under the IPA. This court has adopted a five-prong test to determine whether appellants have met their burden for a new trial based on newly-discovered evidence:

(1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

*Payne v. United States,* 697 A.2d 1229, 1234 (D.C.1997) (citations omitted). The new evidence provision of the IPA is broader and more inclusive than the judicial test for newly discovered evidence under Super. Ct. Crim. R. 33, as the IPA specifically provides for evidence that was known at the time of trial but could not be produced, and for consideration of evidence that could not be compelled or otherwise obtained. However, the diligence requirements in the IPA and Rule 33 are the same, as both require "reasonable" or "due" diligence. *See Diamond v. Davis,* 680 A.2d 364, 391 (D.C.1996) (using "reasonable diligence" and "due diligence" interchangeably to support same concept).

Under Rule 33, we have construed "reasonable diligence" to require parties to pursue potential evidence of which they were not actually aware at the time of trial. *Wright v. United States,* 387 A.2d 582, 587 (D.C.1978). We have held that parties did not exercise sufficient diligence by failing to take advantage of a thirty-six-hour window of time in order to secure an affidavit. *Haley v. United States,* 799 A.2d 1201, 1211 (D.C.2002). Parties have also failed to meet the diligence standard by accepting the government's erroneous proffer regarding the disposition of a related criminal matter, rather than confirming the final disposition for themselves. *Freeman v. United States,* 391 A.2d 239, 242 (D.C.1978).

■ In a similar context, the U.S. District Court for the Northern District of Illinois has held, and we agree, that "due diligence is a standard of reasonableness," *i.e.,* that reasonable diligence is the diligence that is due.[7] *United States v. Locke,* No. 96 CR 290–12, 1999 U.S. Dist. Lexis 11593 at *10 (N.D.Ill. July 20, 1999) (blanket rule that defense counsel must attend, or obtain transcript of, every hearing involving co-defendant in order to exercise due diligence required of convicted defendant seeking new trial under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), would impose unreasonable burden).

■ Application of the IPA in cases where the evidence in question is from witnesses who had previously asserted their Fifth Amendment rights requires

---

7. As our local Rule 33 is identical to Fed. R.Crim.P. 33, we can look to the case law construing the federal rule in the absence of local precedent. *Sousa v. United States,* 725 A.2d 501, 506 (D.C.1999).

careful consideration. In this instance, we agree with the trial court that Bouknight did not exercise reasonable diligence to obtain Jones' testimony at trial. He did not subpoena him for trial. *See United States v. Sims*, No. 01–2020, 2003 U.S.App. Lexis 13054 at *8–9 (6th Cir. June 24, 2003) (appellant's Rule 33 argument is substantially weakened because appellant made no effort to secure testimony, simply assuming the witness would invoke the Fifth Amendment); *United States v. Theodosopoulos*, 48 F.3d 1438, 1449 (7th Cir. 1995) (affidavits from witnesses who had previously indicated that they would invoke their Fifth Amendment rights were not "new evidence" under Rule 33 because appellant did not show attempts to subpoena or secure immunity for witnesses); *Ida v. United States*, 207 F.Supp.2d 171, 180–81 (S.D.N.Y.2002) (statements from witnesses who claim they would have invoked the Fifth Amendment if called at trial were not "new evidence" under Rule 33 because appellant had made no effort at trial to secure their testimony); *United States v. Matos*, 781 F.Supp. 273, 279 (S.D.N.Y.1991)(affidavits from witnesses who had previously indicated that they would invoke Fifth Amendment rights were not "new evidence" under Rule 33 as appellant did not show attempts to subpoena or secure immunity for witnesses). The record gives no indication that Bouknight, personally or through counsel, even approached Jones about testifying. Bouknight's § 23–110 testimony indicates that Steven Davis was dead some two months before trial. Thus any fear of Davis was losing force as a reason for not identifying him as the shooter. Whether the government would have seriously considered granting Jones immunity is unclear, but if Bouknight had wished to have Jones testify, he could have and should have explored it.[8]

■ In sum, we sustain the trial judge's ruling that Bouknight failed to exercise reasonable diligence with respect to obtaining Jones' testimony at trial. He failed to take any action to secure Jones's testimony, even though options were available to him. Thus, Jones' proffered statement did not constitute "new evidence" under the IPA.[9]

8. At the time of trial, such an exploration would have been governed by *Jaggers v. United States*, 482 A.2d 786, 793 (D.C.1984) (where a witness invokes the Fifth Amendment privilege, the trial court must determine whether there is a "substantial and real" risk of prosecution). However, we have since overruled *Jaggers* in *Carter v. United States*, 684 A.2d 331 (D.C.1996) (*en banc*), holding that, where the government declines to grant use immunity to a witness who is the only source of material, exculpatory, non-cumulative evidence, the trial court may explore the reasons for refusal. After exploration, the trial court should consider whether "the government is abusing its discretion and distorting the judicial fact-finding process." *Id.* at 343. Although the court cannot compel the government to grant immunity to the witness, it may, in very limited circumstances, require the government to choose between granting immunity and dismissal of the indictment "or some other commensurate remedy which the court may fashion" in order to ensure a fair trial for the defendant who seeks to call that witness. *Id.*

9. In support of his claim of actual innocence, Bouknight also submitted a handwritten statement from Eric Boyce, who had not witnessed the incident. In his statement, Boyce claimed that Davis threatened to kill him if Boyce did not blame Bouknight for the murder, and suggested a possible motive for Davis to commit the killing. Apart from stating that Boyce refused to testify at trial for the government, Bouknight does not establish that this evidence was not available to him at the time of trial. More important, the IPA requires specific and non-conclusory evidence that demonstrates actual innocence. D.C.Code § 22–4135(c)(2). Therefore, we are satisfied that the trial court did not err by rejecting the argument that the proffered statement setting forth inferences drawn by the non-eyewitness Boyce was "new evidence."

## V.

Finally, we address the trial court's decision not to hold a separate hearing on the IPA motion, and its alternative basis for denying the IPA motion—essentially, that "the defendant's testimony cannot be credited." As to the former, the judge noted that he had heard Bouknight's testimony at the trial and the § 23–110 hearing. At the § 23–110 hearing, Bouknight not only testified under oath to a version of the offense fundamentally different from his confession and his trial testimony, but also testified that he had told his original (court-appointed) trial attorney that it was he who had killed Davis, and that eventually he grew dissatisfied with that attorney because she did not work out a satisfactory guilty plea.

The IPA motion itself set forth that it was grounded entirely on the allegations and proffers of the § 23–110 motion and the claim of innocence they advanced. Bouknight's counsel, however, also sought a separate hearing on the IPA motion, stating that he wished to speak with witnesses who might or might not be available, and who could give exculpatory evidence.

■ We agree with the trial court that under the circumstances of this case no additional hearing on the IPA motion was necessary. As *amicus curiae* observes, it cannot be said in this case that no IPA hearing was held. The court had already held an evidentiary hearing on essentially the same allegations and proffers as they were set forth in the § 23–110

motion, and heard the testimony of Bouknight and Rochon. We emphasize that it cannot be assumed that the fact that there was a previous evidentiary hearing on the effectiveness of counsel will make it unnecessary to hold a hearing on an IPA motion. As Bouknight's brief recognizes, however, the substance of his claim of actual innocence was submitted in his § 23–110 motion. The hearing on his § 23–110 motion dealt directly with his claim of innocence. Under the circumstances, a further hearing was not required.[10]

■ We cannot agree with the trial court, however, that its assessment of Bouknight's testimony as incredible should be considered as a separate ground for denial of the motion. The IPA provides that, in determining whether to grant relief, the court may consider any relevant evidence, but "shall consider" certain factors: (1) "the new evidence," (2) how it demonstrates actual innocence, (3) why it is not cumulative or impeaching, and, most relevant to this discussion, (4) "if the conviction resulted from a trial, and if the movant asserted a theory of defense inconsistent with the current claim of innocence, the specific reason the movant asserted an inconsistent theory at trial . . . ." D.C.Code 22–4135(g)(1).

In the circumstances of this case, the judge's evaluation of the four factors he was required to consider, in particular, his consideration of how and whether the proffered "new evidence demonstrates actual innocence" and the specific reason for

10. Pursuant to § 22–4135(e)(2) and (4), the trial court may, in its discretion, appoint counsel for indigent IPA movants who seek relief on the basis of actual innocence and authorize them to conduct discovery. The trial court was aware of these provisions and of appellant's interest in using them, and directed appellant's § 23–110 counsel to handle the briefing regarding the IPA matter, but did not appoint counsel for other purposes (until making a *nunc pro tunc* appointment in the order disposing of the motion), and authorized no discovery. We see no abuse of discretion on this record. Appellant and his § 23–110 counsel were very familiar with the matters central to appellant's claim of actual innocence.

Bouknight's present assertion of a theory inconsistent with his trial testimony, depended upon the judge's assessment of Bouknight's credibility. We take the trial judge's order to be saying, in effect, that even apart from whether Bouknight had adduced what qualified as "new evidence," Bouknight's repeated lying about the central facts of the case led the judge to discredit his latest version of how the killing took place, with the result that he was unable to come to the conclusion "that it is more likely than not that the movant is actually innocent of the crime...." D.C.Code § 22–4135(g)(2). Thus the judge's emphatic credibility ruling, which gutted the core of Bouknight's IPA motion, was viewed by him as a negative factor so compelling that Bouknight stood no chance of prevailing upon consideration of all the factors the IPA says must be considered. The judge's evaluation of credibility remained, however, a matter that informed the judge's rulings on the matters upon which the IPA required him to rule. The statutory construct itself fully accommodates consideration of the movant's credibility. For that reason, it is unnecessary and inappropriate to depart from that construct by recognizing credibility as a separate basis for a ruling, independent of the considerations set forth by the statute.

In light of his finding on Bouknight's credibility, the judge determined that no further hearing was necessary, as "the motion and files and records of the case conclusively [showed] that the movant is entitled to no relief." (quoting D.C.Code § 22–4135(e)(1)). As we have stated, we agree that, under the circumstances, no further hearing was required.

For the foregoing reasons, the orders on appeal are affirmed.

*So ordered.*