**Roosevelt J. RICHARDSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 09–CO–1410.**

District of Columbia Court of Appeals.

Submitted Oct. 4, 2010.

Decided Dec. 2, 2010.

**1246**

Robert H. Hollander, was on the brief for appellant.

Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, G. Bradley Weinsheimer, Kacie M. Weston, and Suzanne G. Curt, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON and OBERLY, Associate Judges, and NEWMAN, Senior Judge.

OBERLY, Associate Judge:

Following a jury trial, appellant, Roosevelt Richardson, was convicted on October 2, 1996, of five felonies relating to a gun injury suffered by Lanita Spears.[1] He sought relief from his convictions in a consolidated direct appeal and collateral attack under D.C.Code § 23–110 (2001), both of which this court rejected. *Richardson v. United States*, Nos. 97–CF–463 and 99–CO–1237, 814 A.2d 447, Mem. Op. & J. (D.C. Nov. 26, 2002). In October 2006, on the basis of an affidavit from a witness who was not called at appellant's 1996 trial, appellant filed a motion for relief pursuant to the Innocence Protection Act (IPA), D.C.Code § 22–4131 *et seq.* (2010 Supp.), and a second claim for relief for ineffective assistance of counsel under § 23–110. Appellant claimed the affidavit contained "new evidence" that proved his actual innocence. After a hearing at which the new witness testified, the trial judge denied both claims, and appellant now appeals from those rulings. We agree with the trial court that the affidavit and testimony do not entitle appellant to relief under the IPA. In addition, the trial court

---

1. Appellant was charged with threats to injure a person, D.C.Code § 22–2307 (1996 Repl.); assault with intent to kill while armed, D.C.Code §§ 22–501, –3202; aggravated assault while armed, D.C.Code §§ 22–504.1, –3202; possession of a firearm during a crime of violence, D.C.Code § 22–3204(b); and carrying a pistol without a license, D.C.Code § 22–3204(a). These citations are to the 1981 edition of the District of Columbia Code unless otherwise noted.

did not err in denying consideration of appellant's successive § 23–110 motion, which is barred by procedural default. We therefore affirm the judgment of the trial court.

## I. Background

### A. The 1996 Trial

On April 6, 1996, Spears was shot in the neck while she was inside a house at 2123 10th Street, N.W., Washington, D.C. Immediately before the shooting, Spears had been arguing with her boyfriend while she stood outside of the house. Another man, later identified by Spears's mother as appellant, then came outside of the house diagonally across the street, and he and Spears began "cussing and fussing" at each other. When appellant left the porch of the house across the street, Spears thought he was going to get a gun so she went inside the house at 2123 10th Street to call the police.

Before Spears could exit the house again, the "door flew open" and appellant shot her in the neck. (Although Spears did not get a good look at appellant, her mother, Karen Starks, who lived in the house at 2123 10th Street, later identified appellant as her daughter's assailant.) Starks testified that she had been next door at Dana Croskey's house at 2125 10th Street, N.W., but had come outside when she heard the argument between her daughter and her daughter's boyfriend, observed the argument, and then saw the assailant (appellant), carrying a gun, walk into 2123 10th Street. Spears, who was unable to identify the assailant, testified that she had seen her mother exit 2125 10th Street after the argument, as Spears was walking into 2123 10th Street to call the police.

Croskey did not testify at the trial. Defense counsel requested a missing witness instruction for Croskey, charging the government with her absence and reasoning that "[s]he certainly would have been able to provide material information regarding the events and regarding Ms. Starks'[s] opportunity to view the events." The government objected to the request because defense counsel had failed to show that Croskey was within the control of the government and also because there was nothing to suggest that Croskey knew anything adverse to the government's position or that she had come outside during the relevant time period. Accepting the government's arguments, the trial court declined to issue a missing witness instruction.

Thereafter, as previously noted, the jury convicted appellant of five felonies and this court affirmed.

### B. The IPA Proceeding

The IPA allows an individual convicted of a criminal offense to file a motion in the Superior Court to vacate his conviction or order a new trial "on grounds of actual innocence based on new evidence." D.C.Code § 22–4135(a). In relevant part, the IPA defines "new evidence" as evidence that "[w]as not personally known and could not, in the exercise of reasonable diligence, have been personally known to the movant at the time of the trial or the plea proceeding." D.C.Code § 22–4131(7)(A).

Appellant's purported "new evidence" was an affidavit from Croskey, executed in November 2005, in which she maintained that Starks left Croskey's house only *after* hearing a gun shot. The affidavit also stated that Starks and Croskey "both ran next door" to 2123 10th Street, where they found Spears lying on the floor, "holding her neck with her bloody hands," and that neither Croskey nor Starks had seen the shooter. Croskey also averred that, to her knowledge, appellant was not in the neighborhood that day. The essence of appel-

lant's theory of "actual innocence" was that the affidavit established that Starks, who was the only witness at the 1996 trial to identify appellant as the assailant, actually could not have seen the assailant because Croskey's affidavit proved Starks did not leave Croskey's house until *after* the shooting and also because the affidavit stated that neither Croskey nor Starks had seen the shooter.

Pursuant to D.C.Code §§ 22–4135(e)(1) and (2), the trial court appointed counsel for appellant and granted a hearing so that Croskey could testify in person. At the hearing, Croskey's testimony varied from the affidavit in some respects, most notably in her testimony that when they heard the gunshot, Starks left Croskey's house alone, and Croskey went to 2123 10th Street some minutes later.

Between execution of the affidavit in November 2005 and the hearing in October 2009, Croskey suffered two strokes. Croskey testified that, despite her strokes, her memory was "all right," although she sometimes forgot things. Appellant argued that the trial court should credit Croskey's affidavit over her testimony because the strokes had impacted her health, and her memory allegedly was better at the time she signed the affidavit than when she gave the testimony at the IPA hearing. Appellant's theory was that if the affidavit were credited, it would prove that Starks could not have seen the shooter because the affidavit stated that Croskey had not seen the shooter and the two women had come outside together.

The trial court found Croskey's testimony at the IPA hearing "quite credible and specific" notwithstanding her strokes. As to the discrepancies between her 2005 affidavit and her 2009 oral testimony, the trial court found Croskey's oral testimony that she had not left 2125 10th Street with Starks after hearing the gun shot more credible than her ambiguous statement in the affidavit that they "both ran next door." The court reasoned as follows:

> I agree that ..., when you say ["]George and I ran out of the house,["] ... the implication is that they were together. But that is not necessarily what that means, and on November 5th there's no indication that Ms. Croskey recognized and considered the importance of whether they left together or not.

> Here, she does. And here she testified they did not. So[,] for these reasons I find her testimony here today more credible.... [H]er demeanor was that of a lady who was really simply here to tell the truth....

The trial judge subsequently denied appellant's IPA motion, concluding: "As the Government suggests, it is doubtful Ms. Croskey's testimony can be characterized as 'new evidence' under the IPA and in any event it in no way infers [*sic*] Defendant's 'actual innocence.'" Although the judge did not expressly state his rationale for holding that the evidence was not new, he referenced the government's suggestion that appellant could have learned what testimony Croskey would have given "through reasonable diligence and investigation."

## II. Discussion

### A. Innocence Protection Act Claim

Just as we review a trial court's decision to deny a motion for a new trial under Rule 33 of the Superior Court Criminal Rules for abuse of discretion, *see, e.g., Payne v. United States*, 697 A.2d 1229, 1234 (D.C.1997), so too do we review the denial of a motion to vacate a conviction or for a new trial under the IPA. *See Veney v. United States*, 936 A.2d 811, 822 (D.C. 2007) ("To the extent that the statute af-

fords the trial court discretion in its application of the IPA, we review for abuse of discretion."), *modified on other grounds,* 936 A.2d 809 (D.C.2007). As discussed below, the basic standards applied by the trial court in both types of motions are the same, and therefore our standard of review on appeal is likewise the same. Moreover, we must give great deference to the trial court's role as the trier of fact on the ultimate issue of "actual innocence" under the IPA, *see Bell v. United States,* 871 A.2d 1199, 1201–02 (D.C.2005), and thus we apply the clearly erroneous standard of review to the trial judge's rejection of alleged newly discovered evidence offered to prove "actual innocence." *See Young v. United States,* 639 A.2d 92, 95 (D.C.1994). Accordingly, the scope of our review is narrow, both on the question whether appellant has been diligent in proffering "new evidence" and whether that evidence establishes appellant's "actual innocence." In light of our limited role, we find no basis for reversing the trial court's determinations in this case.

### 1. New Evidence

■ The key issue is whether appellant's evidence "[w]as not personally known and could not, in the exercise of reasonable diligence, have been personally known to [him] at the time of the trial." D.C.Code § 22–4131(7)(A). We apply the principles of Superior Court Criminal Rule 33 to IPA motions, which require "the party seeking the new trial [to] show diligence in the attempt to procure the newly discovered evidence." *Bouknight v. United States,* 867 A.2d 245, 255 (D.C.2005). The diligence requirements in the IPA and Rule 33 are reasonable diligence, or "the diligence that is due." *See id.*

Appellant's attempt to prove due diligence fails. Assuming, *arguendo,* that Croskey's evidence could not have been discovered before trial, nonetheless Croskey's testimony certainly could have been discovered through reasonable diligence during the trial. At a minimum, Croskey's existence came to light on the first day of trial, during Starks's testimony, which included the fact that Starks was in Croskey's home on the evening of the shooting. The exercise of due diligence should have caused appellant to attempt to speak with Croskey immediately upon learning of her connection to Starks, the key witness for the prosecution. In fact, appellant's trial counsel recognized Croskey's potential significance when he asked the trial judge to issue a "missing witness" instruction charging the government with Croskey's absence, because she "would be in a position to verify the times that Ms. Starks was allegedly at the scene of the incident, when the incident occurred. She certainly would have been able to provide material information regarding the events and regarding Ms. Starks'[s] opportunity to view the events." With due diligence, however, appellant could have ascertained at the time of trial what Croskey did or did not see and know.

We hold individuals asserting their right to relief on the basis of new evidence to a high standard of diligence in discovering that evidence. In *Bouknight,* the appellant did not subpoena a witness because he thought the witness would assert his Fifth Amendment rights. *See* 867 A.2d at 256. We held that because he never approached the witness about testifying, and could have attempted to broker immunity for the witness, he did not exercise reasonable diligence. *Id.* Other courts have found that a defendant has not exercised due diligence when the defendant learned during trial that additional testimony would be beneficial but did not make an effort to produce the witness(es). *See United States v. Wall,* 389 F.3d 457, 469 (5th Cir.2004) (when defendant became aware

of potentially significant additional testimony on the third day of a two-week trial, it was "incumbent upon the defendant to seek a continuance or demonstrate efforts to obtain the evidence before it [would] be considered newly discovered"); *United States v. DeLuca*, 137 F.3d 24, 40 (1st Cir.1998) (defendant did not exercise due diligence when he had seven days to locate witnesses who allegedly could have provided evidence that would directly contradict the testimony of a witness at trial, yet defendant neither requested a continuance nor moved to compel their appearance).

We recognize that appellant's trial lasted a relatively short three days, and he did not have as much time as the defendants in *Wall* and *DeLuca* to interview Croskey between learning her name and the submission of the case to the jury. However, Croskey was still residing at 2125 10th Street, next door to the crime scene, at the time of the trial, and it would have required minimal effort to locate her. *See, e.g., Haley v. United States*, 799 A.2d 1201, 1211 (D.C.2002) (holding that defendant failed to exercise due diligence by neglecting to use a thirty-six-hour window to secure an affidavit). We reject appellant's contention that the government misled him from seeking to interview Croskey when it stated at trial that "[t]here is no evidence she ever came outside during any of the relevant time periods." We find that a lame excuse for appellant's failure to make any effort to contact a witness who was identified by the key prosecution witness, Starks, as the person in whose home she had been on the very night of the shooting. *See Bouknight*, 867 A.2d at 255 (noting that we have required defense counsel to conduct their own independent investigation of key facts, rather than rely solely on a government proffer).

**2. Actual Innocence**

■ Furthermore, as the trial judge stated, even if Croskey's evidence met the test for "new evidence," it does not show "actual innocence" as required by the IPA. Appellant argues that Croskey's affidavit and testimony prove his actual innocence because they render unreliable Starks's identification of appellant as the shooter. At most, however, Croskey's evidence might have been used to impeach Starks's identification, which would be insufficient to state a claim for relief under the IPA. *See* D.C.Code § 22–4135(g)(1)(C). Moreover, Croskey's oral testimony that Starks left the house without Croskey, which the trial judge credited, refutes appellant's argument that Croskey's testimony proves his actual innocence. Because Croskey and Starks were not together at all times, Croskey could not know what Starks was or was not able to see. In addition, appellant focuses only on the conflict between Starks's and Croskey's testimony. However, he admits that Spears testified that she saw her mother come out of 2125 10th Street before Spears was shot, thus providing additional evidence that Starks could have seen the shooter. Finally, Croskey definitively testified that she did not see the shooter, and she did not and could not say that appellant was not the shooter. Her testimony is therefore not proof of appellant's actual innocence.

**B. Appellant's Second § 23–110 Motion**

■ Appellant also appeals the trial court's decision not to consider his second § 23–110 motion, which is based on ineffective assistance of counsel, the same legal claim as his first § 23–110 motion. Only the facts of the claim, failure to investigate Croskey, differ. A second § 23–110 motion asserting new factual allegations to prove the same legal claim advanced in the first § 23–110 motion is a "successive" motion. *See Bradley v. United States*, 881

A.2d 640, 645 (D.C.2005). "The court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." D.C.Code § 23–110(e). Reviewing for abuse of discretion, *see Bradley*, 881 A.2d at 645, we find none.

 In addition, "if an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim." *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C.1987). If trial counsel was deficient for failing to investigate Croskey, appellant knew about the deficiency as soon as Starks testified during the trial about being at Croskey's house, well before his direct appeal and first § 23–110 claim.

Appellant argues that there should be no procedural bar to his second § 23–110 motion either because the new evidence "is so strong that [the] court cannot have confidence in the outcome of the trial," or because there was cause and prejudice for failure to raise the claim in the first § 23–110 motion. *See Dobson v. United States*, 815 A.2d 748, 758 (D.C.2003) (quotation marks omitted). As explained above, however, the evidence presented in support of appellant's IPA motion does not support his claim of actual innocence, nor can appellant show cause for failure to raise this argument of ineffective assistance of counsel in his first § 23–110 motion.

The judgment of the Superior Court is therefore

*Affirmed.*