**In re Antoine L. McMILLAN, Appellant.**

**No. 03–PR–500.**

District of Columbia Court of Appeals.

Argued March 15, 2005.

Decided Jan. 24, 2008.

James E. Sullivan, appointed by the court, for appellant.

Kimberly K. Edley for appellees.

Robert Bunn filed a statement in lieu of brief of Guardian Ad Litem.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge and WAGNER, Senior Judge.*

WAGNER, Senior Judge:

Appellant, Antoine L. McMillan, appeals from an order of the trial court appointing appellee, Darrel S. Parker, as his conservator. He argues for reversal on the principal grounds that: (1) he was denied the attorney of his choice, a meaningful opportunity to present his case, and the right to remain silent; (2) the evidence was insufficient to support a *prima facie* case that he is an incapacitated individual who requires a conservator to protect his property; (3) the trial court was not impartial; and (4) the trial court erred in denying without prejudice his motion to transfer his estate assets to Maryland where he resides. We affirm the decision of the trial court with the exception of its ruling denying payment from appellant's funds for the expert witness, Dr. Ballard, which must be reconsidered consistent with this opinion.

### I.

The evidence showed that appellant suffers from cerebral palsy as the result of injuries suffered at birth. He became entitled to substantial funds as the result of the settlement of a medical malpractice action. Both of his parents agreed to the appointment of a guardian of his estate. Appellee, Rene Fox, was appointed guardian of his estate and served in that capacity for some thirteen years. When appellant reached his eighteenth birthday, appellee Fox brought a Petition for a General Proceeding in the Probate Division of the Superior Court seeking the appointment of a conservator to receive and manage appellant's funds. She al-

---

* At the time of argument, Chief Judge Washington was an Associate Judge of the court, and

Judge Wagner was Chief Judge.

leged in the petition that appellant is incapacitated and that the appointment of a conservator was necessary because the subject "has property that will be wasted or dissipated unless property management is provided" and "money is needed for the support, care and welfare of the subject." She requested the appointment of appellee, Darrel S. Parker, Esquire, as conservator, stating that Mr. Parker was familiar with conservatorship proceedings and would make an excellent role model for appellant, Mr. McMillan. The court appointed Barbara E. Brown, Esquire, as counsel for appellant, and Dr. Ronald D. Wynne, a clinical psychologist, as Examiner. After several days of evidentiary hearings, the trial court entered findings of fact, conclusions of law and an order in which it determined that appellant is an incapacitated individual within the meaning of the statute and that the appointment of a conservator of his estate was required in his best interest. The trial court denied without prejudice appellant's request to transfer his case to Maryland. Additional facts relevant to the issues appellant raises on appeal are set forth in the sections discussing those issues.

## II.

Appellant argues that there were "structural defects" in the proceedings that require reversal. Specifically, appellant argues that he was denied his rights to counsel of his choice, a meaningful opportunity to present his case, the right to remain silent, and an impartial judge. We consider each of these claims in turn.

### A. Rights to Counsel of Choice and To Present A Case

■ Under the Guardianship Act, an individual alleged to be incapacitated has the right to " 'be represented by counsel and is entitled to present evidence and to cross-examine witnesses ....' " *In re Orshansky*, 804 A.2d 1077, 1093 (D.C.2002) (quot-

ing D.C.Code §§ 21–2041(h), –2054(e) (2001)). After a petition is filed, the court is required to appoint counsel for the alleged incapacitated person unless that individual is represented by counsel. D.C.Code § 21–2041(d); *see also* Super. Ct. Prob. R. 321(d) (requiring the court to appoint counsel concurrently with scheduling a hearing). "If the petition discloses that the subject [*i.e.*, the alleged incapacitated person] is represented by counsel, the Court shall appoint such person unless good cause to the contrary exist[s]." Super. Ct. Prob. R. 321(d). An attorney retained by the subject after the appointment of counsel by the court must file a "notice of appearance" and serve a copy of same on all persons entitled to notice and appointed counsel, among others. Super. Ct. Prob. R. 305(b). The rule provides a procedure for the filing of objections to retained counsel and an ex parte hearing on any objections filed. Super. Ct. Prob. R. 305(b)(2), (3) and (4). The appearance of appointed counsel terminates if and when the notice of appearance of retained counsel becomes effective. Super. Ct. Prob. R. 305(b)(5).

■ In this case, consistent with D.C.Code § 21–2041(d) and Super. Ct. Prob. R. 321(d), the court appointed counsel to represent appellant at the same time that it scheduled a hearing on the petition for a general proceeding to appoint a conservator for him. Appellees contend that there is no showing that any lawyer appeared who was prepared to replace court appointed counsel and represent appellant generally in opposition to the petition of appellant's guardian to appoint a conservator, the sole issue scheduled for trial. Appellees' contention is borne out by the record. On the date of the scheduled initial hearing, C. Sukari Hardnett filed an application for admission *pro hac vice;* however, her application stated that it was

"for the limited purpose of asking [the] Court to transfer Antoine McMillan's estate to Maryland...." The issues raised by the pending petition for the appointment of a conservator concerned whether appellant is an incapacitated individual as defined in D.C.Code § 21–2011(11) and whether a conservator of his estate should be appointed because he had "property that [would] be wasted or dissipated unless property management is provided." *See* D.C.Code § 21–2051(b)(1) (2001). There is no indication that Ms. Hardnett sought to represent appellant in addressing these issues.

Appellant does not dispute that no attorney purporting to be retained by him ever filed a notice of appearance in compliance with Super. Ct. Prob. R. 305(b). Nevertheless, he contends that he demonstrated adequately his request to have counsel of his choice through a pleading filed in his guardianship case, the *pro hac vice* petition of Ms. Hardnett, and the request of Ms. Hardnett's local sponsoring attorney, Coleman Foster, made in open court to have her admitted *pro hac vice*. Appellant argues that these representations are tantamount to the notice of appearance required under Super. Ct. Prob. R. 305(a)(2). Under the circumstances presented, we are not persuaded that the trial court erred by not treating these actions as tantamount to notice under Rule 305. First, Rule 305 sets forth procedures related to the appearance of counsel for an alleged incapacitated person in an intervention proceeding. Ms. Hardnett did not purport to be seeking to be counsel for that purpose. Second, Rule 305 requires counsel to file a notice of appearance with copies to persons listed therein, who then have an opportunity to file objections, which trig-

gers the requirement for a hearing. *See* Super. Ct. Prob. R. 305(b). That did not occur here.

A pleading filed by Mr. Foster in the separate guardianship proceeding shows that he represented appellant's mother, Linda McMillan, who filed the complaint seeking to remove the guardian as appellant's next friend.[1] The guardianship case involved appellant's estate when he was a minor which would be terminated when he reached majority. The petition pending before the trial court in this case concerned an alleged adult incapacitated person who required a conservator to protect his property. Even assuming that the pleading in the guardianship case could be considered as a request to represent appellant in the intervention proceeding, and we do not so conclude, the pleading in the guardianship case does not suggest that anyone was seeking to appear for appellant and address all the issues raised in the intervention proceeding. While that pleading stated that appellant had developed a trusting relationship with the attorneys at Hardnett and Associates and requested the appointment of William D. Jackson of the same firm to replace appellant's court appointed guardian, it did not indicate that either Foster, Jackson or Hardnett was prepared to represent appellant in this general intervention proceeding. The trial court was in the second day of hearings on the petition to appoint a conservator when Mr. Foster appeared in court to move Ms. Hardnett's admission *pro hac vice*. At that time, he represented that Ms. Hardnett was appellant's legal representative in Maryland, having drafted on his behalf a living trust and health care proxy, but he did not indicate that Ms. Hardnett sought to change the limited

---

1. Coleman Foster, Esquire, signed Ms. Hardnett's application as local counsel for her admission *pro hac vice*. W. Coleman Foster, II, Esquire, of the same address is listed as counsel on the complaint to remove guardian. It is not clear whether Foster and Foster II are one in the same.

scope of the representation as stated in her application for admission *pro hac vice.* Thus, it does not appear that the court had before it any counsel retained by appellant who was ready to enter an appearance on appellant's behalf to replace court appointed counsel in this general intervention proceeding. Under these circumstances, the requirement for an ex parte hearing under Rule 305 was never triggered. Therefore, we find no error in the court's failure to hold a hearing under Super. Ct. Prob. R. 305(b)(3) and in allowing court appointed counsel to continue to represent appellant in the intervention proceeding.

The trial court did undertake an inquiry to determine whether to grant Ms. Hardnett's application to appear *pro hac vice.* That inquiry included testimony from appellant concerning whether an attorney-client relationship existed or whether he had, in fact, selected Ms. Hardnett as his attorney.[2] The trial court concluded that appellant had not selected Ms. Hardnett as his counsel and that she had been selected by and represented appellant's parents, which presented a conflict of interest. Appellant argues that the trial court applied an *improper standard in determining* whether to permit Ms. Hardnett to appear as counsel *pro hac vice.* He contends that the trial court failed to evaluate whether he had the capacity to contract for Ms. Hardnett's legal services. Appellant also argues that there was no evidence to support a finding that he did not possess sufficient understanding to contract for legal representation. Appellees respond that the issue was not whether appellant had a general right to retain counsel, but whether Ms. Hardnett should be admitted

*pro hac vice* for a limited purpose, which was not an issue in the trial that was underway. They also contend the evidence was sufficient to support the court's ruling.

 A person alleged to be incapacitated has the right to counsel. D.C.Code § 21–2054(a) and (e). The statute contemplates that this person may select his or her own counsel. *See* D.C.Code § 21–2054(a) (stating that "[u]nless the individual to be protected has chosen counsel, the court shall appoint an attorney to represent the individual"); *see also* Super. Ct. Prob. R. 305(b) (setting forth procedure when retained counsel seeks to appear for the incapacitated person). The trial court acknowledged appellant's rights in this regard, but stated that it wanted to assure that appellant had in fact selected counsel and that there was a basis for that conclusion. The trial court determined that: (1) appellant had not selected Ms. Hardnett as his attorney; (2) Ms. Hardnett was actually his parents' attorney; (3) he signed no retainer agreement for her services; (4) he did not know what a living trust was (*i.e.,* one of the documents that the attorney had allegedly prepared for him); and, (5) he did not have the ability to secure an attorney on his own. The court then denied Ms. Hardnett's application for admission *pro hac vice.*

 Appellant contends that some of these findings are erroneous or irrelevant or insufficient to support the conclusions reached. In a non-jury case, "we address legal issues *de novo,* but the judge's findings of fact can be reversed only if they

---

**2.** While the trial court subsequently struck appellant's testimony taken in the hearing on the petition to appoint conservator, it does not appear that it struck his testimony related to Ms. Hardnett's application for admission *pro hac vice,* which he purportedly supported. In the intervention proceeding, appellant's counsel objected to the petitioner calling appellant to testify, claiming that appellant had "a right not to testify in the petitioner's case in chief." Subsequently, the court struck his testimony given in that connection. See Part II. B., *infra.*

are 'plainly wrong or without evidence to support [them].' " *Jemison v. National Baptist Convention,* 720 A.2d 275, 281 (D.C.1998) (quoting D.C.Code § 17–305(a)) (other citations omitted). Applying that standard, we conclude that the court's factual findings are supported by the evidence. Specifically, appellant testified that his parents called the lawyer and had taken him to see Ms. Hardnett, which he thought occurred about three years earlier. At that time, he would have been a minor child of approximately fifteen years of age. He testified that he did not know how much the lawyer cost or whether he had signed an agreement for legal representation. Further, he stated that he did not know what a living trust was (*i.e.,* the document that Ms. Hardnett allegedly prepared for him). The court noted that Mr. Foster, who represented that he was "of counsel" at the Hardnett firm, filed on behalf of appellant's mother a complaint to remove the guardian in the guardianship proceeding and a motion to appoint a new guardian. Mr. Foster acknowledged that the firm represented appellant's parents in such filings because appellant was not eighteen years old at the time, and suit had to be filed by his parents or his legal guardian. The court also referenced information from appellant's school records, guardianship file, and the examiner's report, which indicated that appellant functioned overall at the second grade level and that he was easily influenced as a consequence of his cognitive limitations. The evidence supports the trial court's factual findings.[3]

Appellant argues that the trial court did not evaluate properly his capacity to make a contract for legal services with the attorney he allegedly selected. He contends that the court did not make the proper inquiry in determining to deny Ms. Hardnett's *pro hac vice* application. It is his position that the court should have determined whether he had the mental capacity to contract for legal services, instead of inquiring into "the mechanics of how his attorney was selected." Appellees argue that the issue actually decided by the probate court was whether Ms. Hardnett should be admitted *pro hac vice* for the limited purpose requested. They contend that the showing of a conflict of interest, one ground upon which the trial court relied, is a valid reason for denying the request.

■ " 'The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature, extent, character, and effect of the particular transaction in which [he] is engaged, whether or not [he] is competent in transacting business generally.' " *Uckele v. Jewett,* 642 A.2d 119, 122 (D.C.1994) (quoting *Butler v. Harrison,* 578 A.2d 1098, 1100 (D.C.1990)). The party asserting incompetency must establish that the mental condition asserted " 'rendered the person *incompetent to execute the particular transaction* according to the standard set forth above.' " *Id.* (quoting *Butler,* 578 A.2d at 1101) (emphasis added). In this case, the trial court determined factually that appellant had not contracted for Ms. Hardnett's services and that he had not selected her as counsel. There is evidence to support these findings. Since the court found that the appellant had not selected or contracted for a lawyer's services, it was not required to determine whether any infirmity rendered him incapable of

---

**3.** We are not persuaded by appellant's argument that the trial court's finding that appellant did not sign any papers—when instead, as he testified, that he did not know *whether*

he had signed any papers—materially affects the disposition, given the trial court's overall findings and conclusions.

entering the contract or transaction. *See id.*

■ The court also found that Ms. Hardnett had a conflict of interest. Conflict of interest is recognized as a valid reason for striking retained counsel in intervention proceedings. *See* Super. Ct. Prob. R. 305(b)(4) (permitting the court to strike the appearance of the subject's retained counsel when there is a conflict of interest that will prevent zealous representation); *see also Alston v. United States,* 838 A.2d 320, 324 (D.C.2003) (citations and internal quotation marks omitted) (in a criminal context, noting that "[t]he Sixth Amendment right to counsel ... encompasses a 'correlative right' to representation that is free from conflicts of interest."). Here, there was evidence that in addition to his own expenses, appellant's funds had to be used to support his entire household while he was a minor child and that his mother consulted with attorneys, including Ms. Hardnett, from time to time in an effort to secure additional funds or purchases from the guardianship estate. The court also had evidence that a lawyer with Ms. Hardnett's firm represented appellant's mother in a complaint seeking to remove the guardian and appoint him as the guardian's successor. In that complaint, Mrs. McMillan averred under oath that the McMillan family had requested that the guardianship be managed by the Hardnett firm. The trial court could conclude on this record, as it did, that a lawyer who represented appellant's parents would have a conflict of interest in representing zealously the interests of their son upon whom they depended for support. Thus, contrary to appellant's argument, there is a factual basis for the trial court's ruling. "Our review of the trial court's determination of whether a conflict of interest exists is a 'deferential one,' presenting a mixed question of law and fact." *Id.* (quoting *Derrington v. United States,* 681 A.2d 1125, 1132 (D.C. 1996)) (other citations omitted). Against that standard, we find no error in the trial court's findings and its ruling based thereon.[4]

■ There is no contention that appointed counsel failed to discharge the statutory responsibilities to represent appellant zealously.[5] *See* D.C.Code § 21–2033(b) (2001) (specifying the duties of counsel in a protective proceeding). While stating that his primary complaint is with the trial court's rulings and not his attorney, appellant contends that counsel of his choice would have presented his case better. He contends that he never had a chance to present his comprehensive plan

---

**4.** Appellant suggests that some conflicts do not mandate an absolute prohibition to dual representation and that some conflicts can be cured by informed consent from all parties. For this assertion, appellant cites generally *Griva v. Davison,* 637 A.2d 830 (D.C.1994) and Rule 1.7 (conflict of interest) of the D.C. Rules of Professional Conduct. Appellees respond that these general rules do not limit the authority of the probate court to prevent conflicts of interest in cases involving unsophisticated subjects of intervention proceedings. Even assuming that it could have been shown that appellant was capable of consenting to representation after full disclosure of a possible conflict, *see* D.C. RULES OF PROF'L CONDUCT R. 1.7(c) (1996), that question was not presented to the trial court. Therefore, we do

not decide it. Further, on this record, we cannot say that the trial court plainly erred in not appointing, *sua sponte,* a guardian ad litem to address any concerns that it had about the apparent conflict of interest of Ms. Hardnett and her associates.

**5.** The record reflects that appointed counsel presented evidence, cross-examined witnesses, asserted vigorously appellant's right to remain silent, including a successful motion for the court to reconsider its earlier adverse ruling on that issue. Appointed counsel filed a comprehensive brief in this case, which appellant's present counsel, who filed a supplemental brief, adopted and incorporated in many respects.

for the protection of his assets without the appointment of a conservator. This plan, he asserts, included utilization of the services of an investment advisor, William D. Jackson, an attorney also with the Hardnett firm.

The record shows that appointed counsel zealously opposed the petition alleging that appellant was an incapacitated person and required the appointment of a conservator to protect his assets. She presented an expert witness on his behalf and the testimony of his mother in support of his position. She insisted on his right to remain silent. See Part II. B., *infra.* Counsel prevailed finally on that issue after persuading the court upon reconsideration to strike appellant's testimony. She cross-examined petitioner's witnesses, and insisted on his right to cross-examine the court appointed examiner after he filed his report.[6] These issues were central to the proceeding before any consideration could be given to who should be appointed. *See* D.C.Code 21–2051(a) and (b) (2001). It was appellant's position in the trial court that no conservator was required. Nevertheless, appointed counsel represented at the end of the hearing that appellant wanted to have Mr. Jackson designated as his conservator. The court did not accord this stated preference controlling weight because appellant had never met him, and Mr. Jackson had not presented himself to the court as a nominee. We cannot say on this record that the appointment of a disinterested member of the bar over the proffered Maryland attorney resulted from some failing by appellant's court appointed counsel.[7] Contrary to appellant's argu-

ment, the record fails to demonstrate that appellant was denied improperly the right to counsel of his choice or prevented from presenting his case.[8]

### B. Right to Remain Silent

■ Appellant argues that the trial court erred in compelling him to testify in derogation of his right to remain silent. Although the trial court ultimately struck his testimony, he contends that the error was not cured because there was insufficient evidence after the petitioner (appellee Fox) presented her case to support the trial court's determination that he was an incapacitated person whose property would be wasted or dissipated unless a conservator was appointed for him.

During her case-in-chief, petitioner called appellant as a witness, and his counsel objected, asserting that he had the right to remain silent. Since counsel could provide no statutory authority for the objection, the trial court overruled it and heard appellant's testimony. During closing argument, appellant's counsel requested that the court not consider his testimony. Counsel cited D.C.Code § 21–2031(e) which specifies that the notice of any proceeding under the Guardianship statute "shall be as prescribed by court rule" and that the notice shall explain, *inter alia,* "the rights to which the parties are entitled." Counsel also cited Super. Ct. Prob. R. 325(b) which provides that notice of the initial hearing on a petition for the appointment of a conservator "shall be as prescribed by Form II–J, except that, in the discretion of the petitioner, Form II–J–1 may be used in lieu of Form II–J."

---

**6.** The examiner did not file his report until after the initial hearing.

**7.** Appointed counsel stated that appellant wanted to be represented by a Maryland attorney and to designate a conservator in Maryland. Mr. Jackson was proffered as a Maryland attorney in Silver Spring, Maryland.

**8.** Although the trial court ruled that appellant's mother, who hired the expert, should be responsible for paying him, appellant had the full benefit of his testimony.

Both forms state that the subject of the proceeding has the right to remain silent. The trial court denied the motion to strike appellant's testimony, noting that counsel sought to rely on it for some purposes but not for others. Later, the trial court reconsidered its ruling and struck the testimony. In doing so, the trial court noted that appellant had received Forms II–J and II–J–1 specifying that he had a right to remain silent.

Appellant argues that the trial court's ruling striking his testimony came too late because the petitioner failed to meet her burden of proof, and he should not have been required to produce evidence in his defense. Appellant's argument is not supported by the record. Petitioner, Rene Fox, who testified, reported that the assets to which appellant was entitled consisted of "[i]nvestments[,] $446,368; bank accounts and savings bonds[,]$188,000; income[,] $110,000 [per] year with increases and periodic larger payments, pursuant to structured settlement." The petitioner also presented the testimony of the court appointed examiner, Dr. Ronald Wynne, a licensed psychologist. Dr. Wynne testified that appellant was functioning academically at the second grade level, although "[h]is intellectual capacity is considerably greater than the tests [reveal]."[9] However, Dr. Wynne testified that appellant would not be able to manage his own substantial funds, which according to the information he had were "at least three quarters of a million dollars." He explained that appellant would not be able to read or understand a bank statement or stock statement, that he did not understand the "legal niceties of a trust," and that he did not know what a conservator or guardian is. He testified that appellant could not even do simple addition, subtraction, multiplication, or division. Dr. Wynne testified that appellant has no concept or understanding of three-quarters of a million or a million dollars and that he thinks in terms of much smaller amounts. Dr. Wynne testified that appellant is an incapacitated individual as defined in the D.C.Code. D.C.Code § 21–2011(11) defines an "incapacitated individual" as

> any adult whose ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator.

Without appellant's testimony, the evidence was clearly sufficient to make a *prima facie* showing that appellant is an incapacitated person within the meaning of the statute, who has substantial assets that he cannot manage without court-order assistance or the appointment of a conservator. Since he opposed the petition, he was required to go forward once that *prima facie* showing was made, as he did.[10] Therefore, on this record, appellant has not shown any prejudice resulting from the timing of the court's decision to strike his testimony.[11]

---

9. Dr. Wynne explained that individuals with respondent's condition, cerebral palsy, have thoughts "that can't get expressed, either because the thoughts are too slow, their ability to speak is too slow, there [are] fine motor problems, ... he's sort of trapped by his body in a sense."

10. In light of our disposition, we have no occasion to consider whether, absent statutory authority, the subject of an intervention proceeding has a right not to testify.

11. There appears to be no contention that the trial court could not find based on all of the evidence that it was clearly and convincingly established that appellant is an incapacitated

## C. Impartiality of the Trial Court

█ Appellant argues that the impartiality of the trial court can be reasonably questioned because it raised objections on behalf of the petitioner, questioned his witnesses, made factual findings without evidentiary support and legal rulings prejudicial to appellant, and frustrated his attempts to present his case. Appellees respond that the trial court acted appropriately, particularly in the context of a proceeding in which it had a *parens patriae* responsibility.

█ A fair trial requires that the judge be an impartial arbiter. *Mack v. United States*, 570 A.2d 777, 782 (D.C. 1990) (citing *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). "In some circumstances, a trial judge may play a more active role, but when that happens, he or she must at all times 'remain a disinterested and objective participant in the proceeding....' " *Davis v. United States*, 567 A.2d 36, 39 (D.C.1989) (citations omitted). There are times when a trial judge "has not only the right but the duty ... to participate directly in the trial, including the propounding of questions when it becomes essential to the development of the facts of the case." *Id.* (citations and internal quotation marks omitted). Since it is primarily the responsibility of counsel to develop the facts of the case, the authority of the court to develop the facts should be used sparingly. *Id.* (citations omitted). However,

we have recognized that more active judicial participation may be required in circumstances where the court has a *parens patriae* responsibility. *See In re A.R.*, 679 A.2d 470, 476 (D.C.1996) (citations omitted) (recognizing the need for limited modifications of the adversary system in custody proceedings where the court acts as *parens patriae* for the child and must obtain the information essential to a "judicious disposition"). This court has also recognized that "the Guardianship Act is remedial legislation under which the probate court acts in a *parens patriae* role to protect the best interests of the incapacitated individual before it." *Orshansky, supra*, 804 A.2d at 1103. "To achieve that paramount objective, the court 'ought not to be passive in the face of what it recognizes is a deficient presentation of evidence.' " *Id.* (quoting *In re M.D.*, 758 A.2d 27, 34 (D.C.2000)). Having reviewed the record in light of these principles, we conclude that the actions of the trial judge about which appellant complains did not exceed permissible bounds nor support a claim of judicial bias.

█ In support of his argument, appellant points out that the court questioned his witnesses to a greater extent than the petitioner's witnesses and that it made certain evidentiary rulings, factual findings and legal conclusions with which he disagrees. " '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.' " *In re Banks*,

person within the meaning of the statute who requires the appointment of a conservator. *See* D.C.Code §§ 21–2051(b)(1), –2011(11). In addition to the testimony of the petitioner and Dr. Wynne, the court had before it the testimony of Dr. Ballard and appellant's mother. Based on the evidence, the court found that Dr. Ballard concluded that appellant's testing scores were the same as reported by Dr. Wynne and that his "Vineland Adaptive Behavior Scales" reflected scores of between a 6 year old and 9 year old. Dr.

Ballard explained that appellant was graded for receptive language at about 7 years, 10 months; expressive level, 6 years, 1 month; and written level at 6 years, 3 months. The court found that appellant's mother could not presently send him to the store to make purchases. His mother had testified that he could not presently get the correct change and that his school had that as one of his goals. The court's findings are supported by the evidence, which is sufficient for its conclusions of law.

805 A.2d 990, 1003 (D.C.2002), *cert. denied*, *Banks v. Committee On Unauthorized Practice*, 539 U.S. 927, 123 S.Ct. 2577, 156 L.Ed.2d 604 (2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). To support a claim of bias of the trial judge, such bias must be personal in nature and have its source "beyond the four corners of the courtroom." *Mayers v. Mayers*, 908 A.2d 1182, 1191 (D.C.2006) (internal quotation marks and citations omitted). Appellant does not claim that the trial court's actions derived from any source outside of its participation in the case.[12] Our review of the record reveals no actions by the trial court that display any "deep-seated favoritism or antagonism that would make fair judgment impossible." *Banks*, 805 A.2d at 1003 (citation omitted).

### III.

### A. Appointment of Conservator

 Appellant contends that the trial court abused its discretion in appointing a member of the bar to serve as conservator. He contends that the court should have given him an opportunity to consult Mr. Jackson, a professional financial advisor and investment counsel about the management of his estate.

D.C.Code § 21–2054(g) provides:

After the hearing, upon finding that a basis for the appointment of a conservator or other protective order has been established, the court shall make an appointment or other appropriate protective order.

As relevant to this case, the order of priority would be (1) the person nominated by the incapacitated person; (2) his parents; and (3) any other person. D.C.Code § 21–2057(a)(2), (a)(5) and (a)(7). However, "[t]he court acting in the best interest of the protected individual, may pass over a person having priority and appoint a person having a lower priority or no priority." D.C.Code § 21–2057(b).

 The decision whether to appoint a conservator is committed to the " 'considerable discretion' " of the trial court, and this court will reverse only for an abuse of discretion. *Orshansky, supra*, 804 A.2d at 1092 (citation omitted). Our standard of review of the trial court's discretionary decision is " 'deferential' in recognition of the role that the trial court's on-the-spot judgment may play in choosing

---

**12.** For example, appellant cites in support of his claim of bias the trial court's rulings related to his alleged choice of counsel and the denial of the request of Ms. Hardnett to appear *pro hac vice*, which is discussed earlier in this opinion. He also cites factual findings that he claims are not supported by the evidence. Some of these challenges appear to be more a question of semantics than a question of the lack of evidentiary support. For example, the trial court stated that appellant has a comprehensive habilitation plan on file at his school, and there was testimony that there was a recent IEP (individual education plan) on file at appellant's school that included goals for appellant of counting, obtaining correct change, and filling out job applications. The court stated that appellant was "known to the court" through a guardianship proceeding. Appellant appears to have taken this to mean that the court was stating that it had some personal familiarity with him, rather than simply that it was referencing the prior proceedings involving his estate. Appellant takes issue with the court's statement in its findings that "[t]he incapacity of the subject ... does not arise solely out of mental retardation," contending that there is no evidence that he is mentally retarded. The court's statement can easily be read as a statement showing that it is not a case implicating D.C.Code § 21–2041(f) (specifying a preference for examiners and visitors qualified as mental retardation professionals where that allegation is made). We need not cite here every instance of an evidentiary finding or ruling of law cited by appellant. However, none show partiality or the appearance of partiality on the part of the trial court that warrant reversal.

among alternatives." *Id.* This court considers whether the trial court had a factual basis for its determination and whether it made an informed decision in light of available alternatives. *Id.*

During closing argument, appellant's counsel informed the court that appellant wanted William Jackson, an attorney in Maryland, to be designated as his conservator. The trial court declined to appoint Mr. Jackson because appellant had never met him, and Mr. Jackson did not present himself to the court as a nominee.[13] Instead, the trial court appointed petitioner's nominee, Darrel Parker, a member of the District of Columbia Bar, as appellant's conservator. In doing so, the court explained that:

> The court is familiar with [Mr. Parker's] work in this area of law and finds him to be an appropriate choice. Attorney Parker could also serve as a role model to Mr. McMillan. The court adopts Dr. Wynne's recommendation that the conservator " . . . should be someone who is willing and able to work closely with Mr. McMillan, to listen to him closely and carefully and to permit him the greatest possible degree of independence in helping make financial life decisions." The court has found Attorney Parker to be a patient person.

Under the circumstances, we cannot say that the trial court did not have a factual basis for its choice. It had no indication that appellant had made an informed choice or any choice of a conservator, and it had no evidence that Mr. Jackson was prepared to accept the appointment. The court appears to have made an informed decision based upon the alternatives. Applying a deferential standard, we cannot say that the court abused its discretion in appointing Mr. Parker as appellant's conservator.

## B. Denial of Motion to Transfer Assets to Maryland

■ Appellant challenges the trial court's ruling denying without prejudice his motion to transfer his assets to the state of Maryland where he resides. He acknowledges that the jurisdiction of the court to maintain the estate in the District of Columbia, but he contends that it should not have done so. *See* D.C.Code § 21–2021(2) (providing for application of the guardianship statute when there is property located in the District of an individual to be protected); *see also Mayes v. Sanford,* 641 A.2d 855, 857 (D.C.1994) (holding that the fact that the incapacitated person has assets in the District alone provides a sufficient basis for keeping the case here). Appellees point out that Mr. McMillan's assets were already under the jurisdiction of the probate court, had been for some thirteen years, and would remain so pending approval of the final account. They contend that the court had an inadequate record upon which to base the transfer.

The trial court denied appellant's motion to transfer without prejudice to his renewing it upon presentation of a factual and statutory basis for doing so. We find no error in the trial court's determination that it did not have an adequate factual basis for permitting the transfer of appellant's funds to Maryland at that time. The court apparently sought to assure that appellant's assets were protected and his requirement for funds to meet his personal needs would continue to be addressed until the court was presented with a basis for ordering the transfer on a permanent ba-

---

13. The trial court did not appoint appellant's parents because they had not been nominated or suggested for appointment, and they continued to be dependent upon appellant's assets for support. Appellant makes no claim that his parents should have been appointed.

sis. We find no abuse of discretion in the trial court's ruling.

### C. Payment of Expert Witness Fee

 Appellant argues that the trial court erred in denying him the right to pay from his estate funds fees for his expert witness, Dr. Ballard. The trial court stated that it would deny compensation to Dr. Ballard because it was his mother who had retained his services, and therefore, she should be responsible for the bill.

Counsel for a subject in a protective proceeding has the responsibility of "[s]ecuring and presenting evidence and testimony and offering arguments to protect the rights of the subject of the ... protective proceeding and further that individual's interest." D.C.Code § 21–2033(b)(3). Further, under the Guardianship Act, upon court approval, "any ... attorney, examiner, [or] conservator ... is entitled to compensation for services rendered ... in an protective proceeding, or in connection with a ... protective arrangement.... Compensation shall be paid from the estate of the ward or person...." D.C.Code § 21–2060(a). Court appointed counsel called Dr. Ballard as a witness in support of the case she presented on appellant's behalf. It was appointed counsel's responsibility to represent appellant zealously, and she apparently thought it necessary to call Dr. Ballard in his behalf. It is not clear that the court considered any request for compensation in that light. On remand, the trial court should do so.[14]

For the foregoing reasons, the case is remanded to the trial court for consideration of the request to pay Dr. Ballard's bill, consistent with this opinion. In all other respects, the decision of the trial court is affirmed.

*So ordered.*

---

**14.** Since Dr. Ballard testified during the proceeding, there is no indication that appellant was prejudiced in presenting his case by the trial court's ruling.