**In re Tena RIPS, Appellant.**

No. 06–PR–1130.

District of Columbia Court of Appeals.

Argued April 23, 2008.
Decided May 15, 2008.

Robert Bunn, appointed by the court, for appellant.

Mary L. Wilson, Senior Assistant Attorney General, with whom Linda Singer, Attorney General for the District of Columbia at the time, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General at the time, were on the brief, for appellee.

Before KRAMER and FISHER, Associate Judges, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Appellant Tena Rips asks us to vacate the Superior Court's order appointing a guardian and conservator. She claims, among other things, that the court committed reversible error when it failed to apprise her of what she now argues was her

"right to remain silent." Discerning no legal error, we affirm.

## I.

On May 30, 2006, the District of Columbia's Office of Adult Protective Services (APS) filed a "Petition for a General Proceeding," alleging that appellant was incapacitated in certain respects and requesting appointment of a guardian and conservator. The petition asserted that Ms. Rips was facing eviction from her valuable long-time rent-controlled apartment but seemed confused and unable to respond effectively to the landlord's complaint, and that her apartment was cluttered and unsanitary. The court scheduled an initial hearing for June 19, 2006, and APS notified appellant of the hearing by giving her a copy of Form II–J1, as required by Superior Court Probate Rule 325(b). Page two of this form lists the subject's "[h]earing [r]ights" and includes the right to "remain silent."

Appellant attended the initial hearing and the government called her to testify in its case-in-chief. Neither appellant nor her counsel objected or asserted a right to remain silent.[1] After hearing the testimony and considering other evidence, the court made findings and appointed a temporary guardian and conservator to "assist [appellant] in the landlord tenant case [and] assist her in[ ] getting back into her apartment."

After a second hearing, on August 8, 2006, the court made the appointment of a guardian/conservator permanent. The court relied on evidence adduced at both hearings, including appellant's testimony, to support the permanent appointment. The record demonstrates that the guardian/conservator successfully protected appellant's property interests by (1) reaching a settlement which allowed her to stay in the apartment and obligated her landlord to make certain repairs, (2) cleaning the apartment, and (3) moving appellant back into her cleaned and renovated apartment.

Appellant now challenges the factual basis of this appointment, asserting that her testimony was taken in violation of her right "to remain silent" and that this "improperly obtained testimony" tainted the rest of the proceedings.

## II.

■ Appellant essentially claims that the court committed reversible error by failing to inform her that she did not have to testify when the government called her to the stand. Neither in her brief nor at oral argument has appellant suggested that there is a constitutional right to remain silent in these circumstances, nor has she identified a statute that expressly creates such a right. Our holding is therefore limited to the argument made by appellant—that she had a right to remain silent because Form II–J1 said that she did.

Appellant's argument depends on bootstrapping. D.C.Code § 21–2031(e) (2001) states that the notice of any proceeding under the Guardianship Act, D.C.Code §§ 21–2001 et seq. (2001), "shall be as prescribed by court rule" and that the notice shall explain, among other things, "the rights to which the parties are entitled." Superior Court Probate Rule 303(d) in turn provides that "[a] party shall have the rights conferred by D.C.Code § 21–2031(e) ... [,]" and Rule 325(b) specifies that notice of the initial hearing "shall be as prescribed by ... Form II-[J1]." Because Form II–J1 lists a right to remain silent, appellant reasons, she must have such a right.

---

1. In fact, after the government put on its evidence, appellant requested an opportunity to address the court directly and the court allowed her to do so.

The mention of a "right" in a court form of uncertain provenance cannot create an enforceable substantive right.[2] *See In re C.A.P.*, 356 A.2d 335, 343 (D.C.1976) (recognizing that "the Superior Court is free to adopt such rules as it deems necessary" but that "it may not adopt rules which 'abridge, enlarge or modify any substantive right ...'") (citations omitted). No provision of the Guardianship Act mentions such a right, nor is it recognized in the Superior Court Probate Rules governing intervention proceedings. *See* Super. Ct. Prob. R. 301–61. Thus, we publish this opinion for one purpose—to put to rest the claim, advanced by appellant and others before her, *see In re McMillan*, 940 A.2d 1027, 1037–38 (D.C.2008), that Form II–J1 in itself creates a right "to remain silent."

Because appellant has not raised, and the parties have not briefed, the broader issue, we decline to consider whether there is a constitutional right to remain silent in these circumstances. *See In re McMillan*, 940 A.2d at 1038 n. 10 ("we have no occasion to consider whether, absent statutory authority, the subject of an intervention proceeding has a right not to testify.")

### III.

■■■ Appellant's remaining contentions do not merit extended discussion. The record demonstrates that appellant received zealous representation, *see* D.C.Code § 21–2033(b) (2001), and that the court's decision is both "within the range of permissible alternatives" and sup-

ported by "a firm factual foundation." *In re Orshansky*, 804 A.2d 1077, 1092–93 (D.C.2002) (internal citations and quotation marks omitted). Her attack upon the examiner's qualifications is raised for the first time on appeal. "It is a basic rule in our jurisprudential system that issues, points, and theories not advanced in the trial court will not be considered on appeal except in exceptional situations where a clear miscarriage of justice would result otherwise." *Southall v. United States*, 716 A.2d 183, 189 (D.C.1998) (citations omitted). Seeing no such exceptional circumstances here, we decline to review this claim. Assuming, for the sake of argument, that appellant preserved a challenge to the court's authority to appoint a "temporary" guardian, that issue is rendered moot by the appointment of a permanent guardian.[3] Finally, appellant asserts that "[t]he continuing intervention is doing more harm than good." We do not have a factual record that would allow us to assess appellant's needs at the present time. More importantly, there are statutory mechanisms for seeking to limit or terminate the appointment, and appellant should present this argument to the trial court in the first instance.

### IV.

We affirm the judgment of the Superior Court without prejudice to any future motion seeking to modify or terminate the

---

**2.** This is particularly true where, as here, there is no indication that the form in question was adopted by the Superior Court Board of Judges. Moreover, the rules mention only the *name* of the form, Form II–J1, but fail to incorporate its *content*, as is done with some other forms. *See* Super. Ct. Prob. R. 308(f)-(g) and 313(e); *see also* D.C.Super. Ct. Order, 119 Daily Wash. L. Rptr. 1273, 1276–86 (D.C.Super. Ct. April 24, 1991) (effective June 1, 1991) (order adopting rules to

implement the Guardianship Act; Form II–J1 referred to by name only, without corresponding content).

**3.** Appellant has failed to identify any collateral consequences that persist due to the appointment of a temporary guardian. As the District correctly points out, any stigma resulting from that appointment is completely overshadowed by the permanent guardianship, which is clearly authorized.

appointment. *See* D.C.Code §§ 21–2044(c), –2049(b), –2072, and –2075 (2001).

*Affirmed.*